NEELY, APPELLANT v. BUFORD.

1. **Arbitration :** The courts are disposed to regard tribunals of arbitration with favor, as being of the parties' own selection, preventing litigation in court and avoiding expense and delay.

2. ———: WHAT IS NOT MISBEHAVIOR IN THE ARBITRATORS. Upon the hearing of a case before arbitrators certain items of account were referred to in the argument and brief of the attorney for one of the parties, which, upon examination after the case was submitted, the arbitrators were unable to find in the books offered in evidence, which were numerous, disorderly and difficult to be deciphered. Without the knowledge and in the absence of the other party and his attorney, the arbitrators requested the first named attorney to point them to the places in the books, where the items referred to by him were to be found, which he did, without comment or explanation. *Held* that this was not misbehavior on the part of the arbitrators, and did not authorize the setting aside of their award

*Appeal from Schuyler Circuit Court.*—HON. JOHN W. HENRY, Judge.

*Higbee & Shelton,* for appellant, cited *Bennett v. Russell,* 34 Mo. 528; *Allen v. Hiller,* 8 Ind. 310; *Richards v. Brockenbrough,* 1 Rand. 449; *Coupland v. Anderson,* 2 Call 106; *Armstrong v. Armstrong,* 1 Leigh 491; *Archer v. William-*

*son*, 2 Har. and G. (Md.) 67 ; *Karthaus v. Ferrer*, 1 Pet. 222 ; *Fryburg Canal v. Frye*, 5 Maine 38 ; *Roloson v. Carson*, 8 Md. 208 ; *Strong v. Strong*, 9 Cush. 560 ; *Ott v. Schroeppel*, 5 N. Y. 482 ; *Kendrick v. Tarbell*, 26 Vt. 416 ; *Dolph v. Clemens*, 4 Wis. 181 ; *Green v. Franklin*, 1 Texas 497 ; *Merritt v. Merritt*, 11 Ill. 565 ; *Bancroft v. Grover*, 23 Wis. 463 ; *Pick v. Hydraulic Co.* 27 Wis. 433 ; 1 Abb. U. S. Dig. 681, pl. 1745, 1746. *Tomlinson v. Hammond*, 8 Iowa 40 ; *Small v. Trickey*, 41 Me. 511 ; *Cutting v. Carter*, 29 Vt. 72 ; *Burchell v. Marsh*, 17 How. 344 ; *Flatter v. McDermitt*, 25 Ind. 526 ; *Smith v. Minor*, 1 N. J. L. 16 ; *King v. Cook*, T. U. P. Charlton (Ga.) 287 ; *Haywood v. Harmon*, 17 Ills. 377.

*Ellison & Ellison*, for respondent, cited Morse on Arb. 126, 127. *Jenkins v. Liston*, 13 Gratt. 535 ; *Sullivan v. Frink*, 3 Iowa 66 ; *Bassett v. Harkness*, 9 N. H. 164 ; *Cleland v. Hedley*, 5 R. I. 163.

NAPTON, J.—We are unable to see any ground upon which the award of the arbitrators in this case was authorized to be set aside. The only ground suggested in the court below, or here, is, that after a patient hearing of the evidence for twenty-nine days and the close of the case by arguments from the counsel on both sides and the submission of briefs by the counsel, the arbitrators, in the absence of one of the parties and his attorney, called in the attorney of the opposite party, to point out certain items referred to in his brief, which they were unable to find. The attorney accordingly, when sent for, appeared before the arbitrators, pointed out the book or page, and retired. Not a word passed between him and the arbitrators in explanation of the item or items pointed out — and they needed no explanation — were perfectly unambiguous and admitted only of one interpretation. The attorneys on each side, at the request of the arbitrators — after the conclusion of their oral arguments — were requested to draw up briefs, and they did so, and Mr. Higbee's brief for his client (the appellant) occupied thirty-two pages of folio paper in

manuscript, and contained a great many references to the
books of accounts and other memoranda, that had been
submitted to the arbitrators.   These books, amounting to
ten or twelve, and running through a period of four or
five years, were in a very disorderly condition, much soiled
and difficult to be deciphered.   In some of them were dis-
tinct sets of paging, beginning, for instance, at the first page
and running on regularly for twenty or twenty-five pages,
and then, after an interval of several blank pages, again
commencing with page one, two, three, &c., and so again
for the third time in the same book.   Necessarily, a refer-
ence to such book and page created some difficulty in find-
ing the page referred to by its number, since there would be
three different pages to which a reference might be applied.
To call in the attorney whose brief they were examining,
in such a state of facts, would seem to be a natural and
harmless course, although a more protracted investigation
on the part of the arbitrators might have led to the dis-
covery.   Had they called in the attorney or his client to
explain an item, in the absence of the other party, which,
without some explanation, they could not understand, the
case would present a different question.   We should then
have a case similar to that of *Harvey v. Shelton*, 7 Beav.
455, which has been referred to here in support of the
judgment below.

The head-note to that case is calculated to mislead — a
singular blunder on the part of so accurate a reporter as
Mr. Beavan — but clearly a mistake, unless the word inter-
view is used by him in a sense more comprehensive than
we use the term ordinarily in this country.   Lord Langdale
(Master of the Rolls) states the facts in that case to be that
Mr. Wakefield (the arbitrator) sent for Mr. Shelton (one
of the parties litigant) to attend him for the purpose of
explaining an item of £350, but did not send for Mr. Har-
vey, the other party interested in the account, of which
this was one item.   The arbitrator asks Mr. Shelton's
opinion, discusses the matter with him, and through his

representations, made in the absence of the other, becomes satisfied and comes to a conclusion on it. The same thing occurred again. Other items presented difficulties, and Mr. Shelton was again summoned, and the other party not summoned. Mr. Shelton had another private interview with the arbitrator; the matter is discussed again, explanations are given, the result of which is that the arbitrator is satisfied. Lord Langdale, on these facts, set the award aside. "Both sides," he says, "must be heard, and each in the presence of the other. In every case in which matters are litigated, you must attend to the representations of both sides, and you must not, in the administration of justice, in whatever form, whether in the regularly constituted courts, or in arbitrations, whether before lawyers or merchants, permit one side to use means of influencing the conduct or decisions of the judge, which means are not known to the other side."

We refer to this case because it is the strongest case cited by the counsel for the appellee, and because we heartily subscribe to the opinion of the learned judge who decided it. How essentially different are the facts of the case now before us, must be obvious. Here, there was simply a request by the arbitrators to the attorney who had furnished a brief, to point out certain items in a book of accounts, which, by reason of the irregular and careless mode of keeping the books, could not readily be found; which items had been already pointed out in the antecedent discussions, in the presence of both parties and their counsel, and were referred to in the written brief or argument submitted at the close of the case. We can see no more impropriety in this than if the attorney had been called on to decipher an illegible sentence or word in his brief.

Courts are disposed to regard with favor these tribunals of the parties' own selection, which prevent litigation in courts and are less expensive and dilatory. And we need only repeat what Chancellor Kent observed in *Herrick v. Blair*, (1 John Ch. R. 101) to show in what light these

arbitrations are regarded, and that slight blunders, even, committed by the arbitrators, will not justify the courts in annulling them. Ch. Kent says: "The uniform language of the cases is, that an award cannot be impeached but for corruption, partiality or gross misbehavior in the arbitrators, or for some palpable mistake of the law or the fact. The arbitrators are judges of the parties own choosing; their proceedings and award are treated with great liberality, and even a mistake upon a doubtful point, often will not open an award. These principles have been declared and asserted in a series of decisions, all going to the same point, and containing a weight of authority not to be resisted."

It is apparent from all the authorities that arbitrators, under our statute, are not in the situation of juries, under the surveillance of an officer and without the power to hold an interview with any one, except by leave of the court. In fact, the 9th section of our statute has embodied substantially, and almost literally, the observation of Ch. Kent in the case we have quoted, and the 10th section points out the mode in which courts are allowed to modify or correct an award. It is apparent that the objections to the present award do not fall within any of the cases specified in the act, authorizing either the vacation or modification of the award.

We will observe, lest it should be thought that we had overlooked the testimony of Mr. Bradley, that it is clear that Mr. Bradley, in his conversation with Mr. Cawood, at Glenwood, misunderstood the arbitrator. Mr. Cawood, Mr. Hughes and Mr. Higbee, were all practicing lawyers in the courts of that county — the two former being arbitrators, and the latter the appellant's attorney — and the statements of Mr. Hughes and Mr. Higbee confirm the statement of Mr. Cawood as to what occurred, and the account of the transaction by all three witnesses has such intrinsic probability as would require something more than the recital fromrecollection of a casual conversation

with Mr. Cawood, to shake. Indeed, the object of that conversation is explained by Mr. Cawood, and its substance, and these conform precisely to what had occurred at the arbitration when Mr. Higbee was called in. The object was to apprise Mr. Bradley that the arbitrators had called on Mr. Higbee to point out his reference, and probably Mr. Bradley would be called on for the same purpose. There was no secret or concealed interview then — upon Mr. Bradley's own testimony — but he was promptly advised of it at Glenwood, and requested to go up to Lancaster and be ready to point out the references in his brief, also, if the arbitrators should not be able to decipher it or find the book or page referred to.

The judgment of the circuit court is reversed and the cause remanded, with directions that a judgment on the award be entered in accordance with the motion of appellant's attorney. The other judges concur, except Judge HENRY, who did not sit.

REVERSED.